# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GREG MCWILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-19-212-GLJ** |
| ) | |
| **MICHAEL DINAPOLI, in his** ) | |
| **individual capacity, and BRYAN** ) | |
| **COUNTY BOARD OF COUNTY** ) | |
| **COMMISSIONERS** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter comes before the Court on motion by Plaintiff to exclude defense expert witness testimony from Captain Tim Tipton, who has been designated as an expert by Defendant Michael DiNapoli in this case. For the reasons set forth below, the undersigned Magistrate Judge hereby finds that the Plaintiff's *Daubert* Motion [Docket No. 103] should be GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises out of an encounter between Plaintiff Greg McWilliams and deputies from the Bryan County Sheriff's Office ("BCSO"), Defendant Deputy Michael DiNapoli and Deputy Trainee Justin Vawter. On May 26, 2018, the Plaintiff was riding as a passenger in Mr. Jay Raborn's golf cart when Mr. Raborn drove the golf cart into the parking lot at the Newberry Creek Marina. The lessee of the marina believed Mr. Raborn was not supposed to be there with his golf cart and ultimately called the BCSO for help

removing them from the premises. Defendant DiNapoli and Deputy Trainee Vawter responded. The encounter ultimately ended in Defendant DiNapoli using force against Plaintiff McWilliams and arresting him.

In this case, the Plaintiff has alleged two causes of action in his Petition. The first cause of action is raised as to Defendant DiNapoli, alleging unconstitutional use of excessive and unreasonable force pursuant to 42 U.S.C. § 1983. The second cause of action is raised as to the Defendant Board, alleging an Oklahoma state law claim of negligence. Defendant DiNapoli has been denied qualified immunity, and the case is currently set for trial December 20, 2022. The Court notes that the Defendant Board appears to take the position that Defendant DiNapoli's actions *did* constitute excessive force and therefore the two Defendants are not in alignment in their defense of this case. Defendant DiNapoli has now designated Captain Tim Tipton to testify as an expert as to law enforcement practices and police uses of force on his behalf, *see* Docket No. 36, p. 5, No. 15, and the court notes that Captain Tipton is only designated as an expert on behalf of Defendant DiNapoli, and not on behalf of Defendant Board. In preparation for his testimony at trial and in accordance with Fed. R. Civ. P. 26(a)(2), Captain Tipton prepared a Report and the Plaintiff has objected to portions of his opinion. *See* Docket No. 103 & Ex. 1. This matter came on for hearing on the *Daubert* motion, in addition to pending motions in limine, on November 2, 2022. *See* Docket Nos. 112, 117. Captain Tipton was not present at the *Daubert* hearing and therefore did not testify, *see* Docket No. 117, and his deposition has not been taken in this case. The Court also notes that Defendant DiNapoli has informed the Court that he

will not be seeking to admit Captain Tipton's Report at trial, so the Court's assessment is thus limited to the contents of Captain Tipton's Report.

## I.      LEGAL STANDARD UNDER *DAUBERT* & FRE 702

A witness who is qualified as an expert by knowledge, skills, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  However, the undersigned Magistrate Judge notes the "'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to 'opinion' testimony.'"  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993) (*quoting Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988)).  "Courts should, under the Federal Rules of Evidence, liberally admit expert testimony, and the trial court has broad discretion in deciding whether to admit or exclude expert testimony." *United States v. DeLeon*, 2021 WL 4909981, at *15 (D.N.M. Oct. 21, 2021) (citations omitted).  And the "fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge.[] Thus, within the scope of the rule are not only experts in the strictest sense of the word, *e.g.*, physicians, physicist, and architects, but also the large group sometimes called 'skilled' witnesses[.]"

Advisory Committee Notes to Fed. R. Evid. 702, 1972 Proposed Rules.  "And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'"  *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 149 (1999) (*quoting Daubert*, 509 U.S. at 592). Captain Tipton's opinion testimony in this case falls into that category of "skilled witness."

"Before considering whether an expert's testimony is reliable or helpful to the jury, 'the district court generally must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion.'" *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (*quoting United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)).  Only then must a Court "satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). *See also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) ("Fed. R. Evid. 702 imposes on a district court a gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'") (*quoting Daubert*, 509 U.S. at 589).

In its "gatekeeping role, the district court must make specific findings on the record so that the appellate court can determine if it carefully reviewed the objected-to expert testimony under the correct standard." *United States v. Stevenson*, 2022 WL 4368466, at *1 (E.D. Okla. Sept. 21, 2022) (*citing, inter alia, United States v. Cushing*, 10 F.4th 1055,

1079 (10th Cir. 2021)).  "Reliability is about the reasoning and methodology underlying the expert's opinion.  Relevance is about whether the expert testimony will assist the trier of fact or whether it instead falls within the juror's common knowledge and experience and will usurp the juror's role of evaluating a witness's credibility."  *United States v. Wofford*, 766 Fed. Appx. 576, 581 (10th Cir. 2019) (internal citations and quotations omitted). "Ultimately [] expert testimony is admissible under Rule 702(a) if it will simply help the trier of fact to understand the facts already in the record, even if all it does is put those facts in context."  *Gutierrez de Lopez*, 761 F.3d at 1136.  *See* Fed. R. Evid. 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Factors for evaluating whether an expert's scientific testimony is reliable include: (i) whether a theory or technique can be tested, (ii) whether it has been subject to peer review and publication, (iii) the known or potential rate of error, and (iv) whether such a theory or method has achieved "general acceptance" in the scientific community.  *Daubert*, 509 U.S. at 593-594.  Other factors helpful in identifying whether evidence is sufficiently reliable are: (i) whether an expert is offering opinions arising out of research conducted independent of the litigation, or developed expressly for purposes of testifying, *see Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1317 (9th Cir. 1995); (ii) whether an expert unfairly extrapolates from an accepted premise to an unfounded conclusion, *see General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997); (iii) whether an expert adequately

accounts for obvious alternative explanations, *see Claar v. Burlington N.R.R.*, 29 F.3d 499, 502-503 (9th Cir. 1994); (iv) whether an expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting[,]" *see Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997); and (v) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give, *see Kumho Tire*, 526 U.S. at 150.  Advisory Committee Notes to Fed. R. Evid. 702, 2000 Amendments.  These lists are not exclusive, as the Supreme Court reiterated in *Kumho Tire*: "[W]e can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence . . . the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [her] testimony."  526 U.S. at 150 [internal quotation omitted].  Further, the Tenth Circuit has stated that "the reliability criteria enunciated in *Daubert* are not to be applied woodenly in all circumstances."  *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009).

## II.    CAPTAIN TIM TIPTON'S PROPOSED OPINIONS

### A.    Captain Tipton's Qualifications.

The Court first addresses Captain Tipton's qualifications.  *See Gutierrez de Lopez*, 761 F.3d at 1136 ("Before considering whether an expert's testimony is reliable or helpful to the jury, 'the district court generally must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion.'") (*quoting*

*Nacchio*, 555 F.3d at 1241).  "The proponent of the expert's opinion testimony bears the burden of establishing that the expert is qualified, that the methodology he or she uses to support his or her opinions is reliable, and that his or her opinion fits the facts of the case and thus will be helpful to the jury." *United States v. Chapman*, 59 F. Supp. 3d 1194, 1211 (D. N.M. 2014), *affirmed,* 839 F.3d 1232 (10th Cir. 2016) (citation omitted).  Fed. R. Evid. 703 instructs that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of *or* personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." (emphasis added).  "Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592 (*citing* Rules 701, 702, and 703).

Defendant DiNapoli asserts that Captain Tipton is uniquely qualified to serve as an expert in this case.  Captain Tipton's *Curriculum Vitae*, attached as part of his report, reflects that he has twenty-five "years of experience in the design, development, and implementation of law enforcement use of force training programs," as well as "experience in developing and teaching instructor-level tactics courses across the United States." Docket No. 103, Ex. 1, pp. 17-21.  He also possesses several certifications and affiliations, including both as a Certified Police Use of Force and Police Practices Expert Witness.  *Id.*,

p. 18.  As a number of other courts have done, here the Court "concludes that Tipton has the appropriate qualifications to testify in this case, given his experience, education, and years of experience as a law-enforcement officer and as someone who offers training on use-of-force tactics." *Vondrak v. City of Las Cruces*, 2009 WL 3241555, at *19 (D.N.M. Aug. 25, 2009).  *See also Wise v. Bowling*, 2022 WL 4480342, at *7 (N.D. Okla. Aug. 26, 2022) ("Upon examination of Mr. Tipton's qualifications, I conclude that he is qualified to render an opinion in this case, including regarding the standards governing the proper use of force by law enforcement and detention officers in a correctional setting.").

### B.    Reliability and Relevance of Captain Tipton's Opinions

The Court next turns to the question of whether Captain Tipton's opinions are reliable and/or relevant.  Captain Tipton addressed two issues as part of his assessment of the facts surrounding this case.  First, he opines on the legal authority of Defendant DiNapoli to demand that Mr. Raborn and Plaintiff leave the marina or be cited for trespassing.  Second, he opines that the use of force Defendant DiNapoli applied to the Plaintiff was reasonable and proper, based on acceptable law enforcement standards and practices.  *See* Docket No. 103, Ex. 1, p. 8.  In aid of reaching these conclusions, Captain Tipton reviewed the Complaint, OSBI Report, BCSO Sheriff Incident Report, BCSO Investigation, Newberry Creek marina video of the incident, and the depositions of the Plaintiff, Defendant DiNapoli, and Deputy Trainee Justin Vawter.  *Id.*, pp. 3-4. Additionally, he referenced Oklahoma Statutes, the CLEET Defensive Tactics Instructor Manual, International Association of Chiefs of Police ("IACP") Model Policy,

Contemporary Criminal Procedure by Larry E. Holtz, National Law Enforcement Training Center Manual, Monadnock Defensive Tactics System ("MDTS") Manual, The Federal Law Enforcement Informer, and the internet.  *Id.*, p. 4.

The Plaintiff objects to Captain Tipton's expert opinion, asserting that (1) his methodology was selective, unreliable, and not supported scientifically, namely, that Captain Tipton failed to review a declaration by the BCSO Sheriff which stated, *inter alia*, that Defendant DiNapoli intentionally misled the BCSO and that there was no factual or legal basis for his incitement of the Plaintiff; (2) Defendant DiNapoli's authority to order Mr. Raborn and Plaintiff to leave the marina is not in dispute; (3) his opinions on reasonableness, and other legal conclusions, should be excluded as impermissible; (4) his opinions are expressed in a conclusory fashion without support for how the conclusions were reached, including a failure to cite law enforcement standards with specificity; and (5) his opinions as to various beliefs and motivations of the parties and participants to the incident are impermissible and irrelevant, particularly as he has rooted his opinions in Defendant DiNapoli's subjective beliefs.  Additionally, the Plaintiff points out that Captain Tipton wholly failed to address Defendant DiNapoli's role in inciting the entire incident.

### 1.    Legal Authority to Cite Mr. Raborn for Trespassing

As to Captain Tipton's first opinion, that Defendant DiNapoli had the legal authority to demand that Mr. Raborn and Plaintiff leave the marina or be cited for trespassing, the Court finds it should be excluded.  The Plaintiff indicates that he will not challenge Defendant DiNapoli's authority to ask Mr. Raborn and the Plaintiff to leave the marina,

and correctly points out in his Reply Brief that Defendant DiNapoli did not address this argument in his Response.  Because this will not be in dispute at trial and the Defendant has not challenged Plaintiff's argument here, the Court will thus exclude any testimony from Captain Tipton as to Defendant DiNapoli's legal authority to ask Mr. Raborn and the Plaintiff to leave the marina.  *See Parker v. Board of County Commissioners of Shawnee County, Kansas*, 2002 WL 31527763, at *1 (D. Kan. Nov. 5, 2002) ("Because plaintiff has failed to respond to defendants' arguments[,] the court deems plaintiff's claims to have been abandoned or waived by plaintiff's failure to respond.").

   **2.  Reasonableness of Use of Force Defendant DiNapoli Applied to Plaintiff.**

   The Court now turns to Captain Tipton's opinion as to whether the use of force Defendant DiNapoli applied to the Plaintiff was reasonable under the circumstances.  The Plaintiff initially challenges Captain Tipton's Report as unreliable, asserting he selectively reviewed material and that it is not supported scientifically.  Specifically, he asserts that Captain Tipton never spoke with the BCSO Sheriff or reviewed his declaration.  Additionally, he contends that Captain Tipton failed to address Defendant DiNapoli's role in inciting the Plaintiff.  The Defendant contends, however, that the Sheriff's declaration was produced months after Captain Tipton's Report was completed, further pointing out that the Sheriff was not a first-hand witness to the event and that he thus relied on the same materials used by Captain Tipton in making his own conclusions, *i.e.,* the video of the incident and Defendant DiNapoli's deposition.  To the extent Plaintiff challenges the reliability of his report because there was certain evidence or documentation omitted from

-10-

review, this would be appropriate for challenge on cross-examination, not exclusion entirely. *See Wise*, 2022 WL 4480342, at *7 ("Mr. Wise also spends significant effort disagreeing with Mr. Tipton's conclusions in this case and arguing that Mr. Tipton relied upon incomplete or incorrect information. It is not surprising that Mr. Wise disagrees with Mr. Tipton's report or his conclusions, which differ from Mr. Wise's own expert's findings. However, Mr. Wise's disagreement does not warrant excluding Mr. Tipton's testimony. Rather, these disagreements and perceived weaknesses can be addressed on cross-examination."). *See also McCullon v. Parry*, 2021 WL 4947237, at *12 (D. Colo. June 23, 2021) ("Additionally, the court cannot conclude that Mr. Bezy's opinion is unreliable based on the allegedly missing information. 'As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility. []Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.'") (*quoting Squires ex rel Squires v.  Goodwin*, 829 F. Supp. 2d 1041, 1056 (D. Colo. 2011).  The Court thus declines to exclude Captain Tipton's testimony on this basis, but nevertheless agrees that his statements and opinions are inadmissible for the following reasons.

*First*, statements and testimony as to constitutional or legal standards, including testimony related to Oklahoma statutes and the Constitution, are inadmissible.  Under Fed. R. Civ. P. 704(a), "an opinion is not objectionable just because it embraces an ultimate issue."  However, "a court may exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness

believes the verdict should be.  Experts should avoid legal conclusions, which usurp[ ] the jury's role and should refrain from stating their opinions about legal standards or legal conclusions drawn by applying law to the facts.  When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination." *Estate of Smart v. City of Wichita*, 2020 WL 3618850, at *2 (D. Kan. July 2, 2020) (quotations omitted).  In other words, "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case." *Zuchel v. City & Cnty. of Denver, Colo.*, 997 F.2d 730, 742 (10th Cir. 1993) (quotation omitted).  *See, e.g.*, *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1285 (W.D. Okla. 2018) ("Mr. Cocklin cannot offer an opinion that Howard's conduct was constitutionally improper, nor can he offer testimony that would in effect instruct the jury on the law regarding the use of force.").  Captain Tipton is likely well aware of this standard by now.  *See Wise*, 2022 WL 4480342, at *7 ("Finally, just as Dr. Lyman attempted to discuss constitutional or legal standards, Mr. Tipton also discusses Oklahoma statutes and the Constitution. Discussion of legal and constitutional standards improperly instructs the jury regarding the law of the case and may confuse the jury. Thus, Mr. Tipton is not permitted to offer any testimony that would instruct the jury regarding the law regarding use of force, including his opinion that Creek County Jail followed Oklahoma statutes.) (*citing Lippe*, 287 F. Supp. 3d at 1285).

Interwoven with the question of testimony regarding constitutional and legal standards is the *second* issue as to Captain Tipton's opinions, *i.e*, his statements that Defendant DiNapoli's actions were "reasonable," "not excessive," or "lawful," and that Plaintiff displayed "assaultive" behavior.  As noted above, "the Tenth Circuit has stated: '[A]n expert may not state legal conclusions drawn by applying the law to the facts.'" *United States v. Rodella*, 2014 WL 6634310, at *13 (D.N.M. Nov. 19, 2014) (*quoting A.E. by and Through Evans v. Indep. Sch. Dist. No. 25, of Adair Cnty., Okla.,* 936 F.2d 472, 476 (10th Cir.1991)).  Rather, the Court will instruct the jury on the reasonableness standard, and it will be for the jury to apply *that* standard to Defendant DiNapoli's conduct.  *Estate of Smart*, 2020 WL 3618850, at *4 ("The court finds Lyman's opinions that officers' actions were "excessive" and "unreasonable" are legal conclusions that usurp the jury's role by applying the facts to the law. Because these "opinions do not assist the trier of fact in understanding the evidence, but rather embrace the ultimate issue," the court will not permit such testimony.").  *Cf. Vondrak*, 2009 WL 3241555, at *19 (allowing testimony regarding tightness of handcuffs based on a defined methodology, as well as the appropriateness of rear-handcuffing the Plaintiff, "as long as he does not make reference to well-established or national standards, and as long as he does not frame his opinion in terms of whether McCants acted reasonably.")

*Third*, testimony as to whether Defendant DiNapoli's conduct was in conformity with national standards and police practices is inadmissible.  This is because "violations of state law and police procedure generally do not give rise to a § 1983 claim" for excessive

-13-

force. *Romero v. Board of County Comm'rs,* 60 F.3d 702, 705 (10th Cir. 1995). While it is true that the "Tenth Circuit has affirmed both the admission and exclusion of expert testimony on nationally accepted police practices," *Martinez v. Salazar*, 2016 WL 9488862, at *7 (D.N.M. Dec. 14, 2016) (*quoting United States v. Rodella*, 2014 WL 6634310, at *18 (D.N.M. Nov. 19, 2014) (*citing Marquez v. City of Albuquerque,* 399 F.3d 1216, 1222 (10th Cir. 2005) (excluding the testimony) and *Zuchel,* 997 F.2d at 742-43 (admitting the testimony)), "[i]n the cases in which the Court has addressed this issue, most, and all recent, cases have ruled that evidence regarding the violation of police procedure is not admissible in an excessive force case." *Rodella*, 2014 WL 6634310, at *17 (collecting cases). *See*, *e.g.*, *Mata v. City of Farmington,* 798 F. Supp. 2d 1215, 1219 (D.N.M. 2011) (excluding, under rule 402, "evidence that the Defendant Officers did not follow SOPs and police training, because this evidence is not relevant"); *Jonas v. Bd. of Comm'rs of Luna Cnty.,* 699 F.Supp.2d 1284, 1299 ("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training."); *Vondrak v. City of Las Cruces,* 2009 WL 3241555, at * 14 (concluding that "expert testimony that refers to SOPs or other established law-enforcement standards" was inadmissible under Tenth Circuit precedent). As our sister courts have done, this Court follows *Marquez* in excluding testimony regarding national standards and police practices in cases involving § 1983 claims for excessive force. *See Martinez*, 2016 WL 9488862, at *7 (D.N.M. Dec. 14, 2016) ("*Marquez* [399 F.3d at 1219-1220], *Tanberg* [*v. Sholtis*, 401 F.3d 1151 (10th Cir. 2005], and their progeny include only Section 1983 excessive force

-14-

claims against the individual police officers alleged to have used unjustifiable force."). This is in contrast to *Zuchel* and its progeny, relied on by Defendant DiNapoli *and* the Plaintiff in their Reply*, where *Zuchel* involved a § 1983 claim for inadequate training *and not* excessive force.  *Zuchel*, 997 F.2d 730.  The Court therefore finds that such testimony is both irrelevant *and* confusing because a violation of national standards and/or police procedures is "not *ipso facto* a Fourth Amendment violation."  *Estate of Smart*, 2020 WL 3618850, at *4 (D. Kan. July 2, 2020) (*quoting Marquez*, 399 F.3d at 1222).  Indeed, this very restriction was applied to Captain Tipton in *Vondrak*, where the Court stated, "Nor may [Tipton] offer testimony that refers to national standards or well-established police practices."  2009 WL 3241555, at *19.

It is notable that such testimony *may* be relevant in cases "involving (1) claims against municipalities alleging a police department policy, practice, or custom permitted officers to use excessive force and/or (2) state-law claims alleging an officer acted negligently."  *Id. See Choate v. City of Gardner, Kan.,* 2020 WL 774097, at *3 (D. Kan. Feb. 18, 2020) (distinguishing *Zuchel* and *Marquez* on the basis that *Zuchel* involved a claim of municipal liability, and allowing testimony on violation of police procedures and practices as relevant to a municipal-liability claim); *Martinez*, 2016 WL 9488862, at *7 ("Thus, while national and generally accepted police practices may be relevant to proving a claim resting on municipal or supervisory liability, those same standards are not relevant to whether an individual officer acted reasonably under certain circumstances.").  But here, Captain Tipton is only designated as an expert on behalf of Defendant DiNapoli (and not

against the Defendant Board, against which a state law claim of negligence *has* been raised), and the only claim alleged by Plaintiff against Defendant DiNapoli is a § 1983 claim of excessive force in violation of the Fourth Amendment. Testimony as to national standards and police practices by Captain Tipton is therefore inadmissible in this case.

*Fourth*, any expert testimony by Captain Tipton as to any person's state of mind, but particularly the subjective state of mind of either Defendant DiNapoli, Deputy Trainee Vawter, or the Plaintiff, is inadmissible. Given the degree of speculation required for such an opinion, such testimony cannot be considered reliable. *See Choate*, 2020 WL 774097, at *7 (D. Kan. Feb. 18, 2020) ("The Court agrees with plaintiff that Mr. Huth may not speculate about what an officer knew or did not know, although he may rely on that officer's own testimony if it provides a basis for Mr. Huth's expert opinion."). *See also Estate of Smart*, 2020 WL 3618850, at *6 (D. Kan. July 2, 2020) ("The court agrees that this conclusion is based on speculation of what Mr. Smart may have known at the time. As such, it is impermissible and will be excluded."). Although Captain Tipton does refer to Defendant DiNapoli's deposition in support of his conclusions, his testimony as to Defendant DiNapoli is nevertheless couched in impermissible conclusions related to reasonableness and is therefore inadmissible on that related basis as well. This is of course distinguishable from this Court's previous ruling, *see* Docket No. 118, allowing Defendant DiNapoli to testify as to his own subjective beliefs.

Based on these findings and limited to the opinions conveyed in Captain Tipton's Report, the Court can find no admissible portion of Captain Tipton's opinion remaining as

to this case and these facts.  While the Court can conceive of possible testimony Captain

Tipton could offer that would be permissible, *compare with Vondrak*, 2009 WL 3241555,

at *19, nothing in his report meets such standards.  Accordingly, Plaintiff's Motion shall

be granted.

## **CONCLUSION**

Accordingly, Plaintiff's *Daubert* Motion [Docket No. 103] is hereby GRANTED.

IT IS SO ORDERED this 10th day of November, 2022.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**